and we'll turn to the last case to be argued today, 20-1955, USA v. Bedi, B-E-D-I. Mr. Lewis? Good afternoon, your honor. I am Alan Lewis of Carter, Ledger, and Milburn for the appellate. The district court's grant of summary judgment should respectfully be reversed. The issue at the heart of this case is whether the government may use the Federal Debt Collection Procedures Act to enforce a money judgment for wages owed to an individual employee. The plain meaning of two separate provisions in the FDCPA require that this question be answered with an emphatic no. First, the FDCPA's scope is expressly limited to debts that are, quote, not to the United States but instead for money owing to Helga Ingvar's daughter. Second, the FDCPA also has a limiting clause that precludes its application to debts that derive from contracts, quote, originally entered into by only persons other than the United States. And here, that is what we have, a debt deriving from an employment relationship between the appellants and Helga, in which the government was never a party. The government's opposing argument relies heavily on this court's 1993 decision in the EDP case. There, a split panel permitted the NLRB to use the FDCPA to enforce a back pay award against the hospital. There are four reasons why EDP does not constrain the outcome of this case. First, EDP was wrongly decided. In that case, the panel confused the government's regulatory interest with a property interest. We just can't go ruling our own press, you know, just because they were wrongly decided. I thought it was wrongly decided at the time it was issued. You know, it's on the books. So where do we go from there? Well, that is simply the first of my four reasons why EDP does not constrain this court, Judge Walker. But I believe the court does have some leeway here, as the court held in Shilang, quote, the fact that we have failed to follow the plain language of a law of Congress does not require that we do so indefinitely. If I may, I'll continue to explain why it was wrongly decided and then provide some additional reasons why. Let me ask you this, Mr. Lewis. If we were wrong 29 years ago, 29 years ago, Congress hasn't done anything about it. What do you say about that? They haven't repudiated EDP. Congress is presumed to be aware of our decisions. And so Congress, I guess, has put up with the wrong decision in the second busiest circuit in the country for 29 years. I think that, respectfully, EDP has a relatively weak claim to enforcement under the sorry decisis doctrine. And that is because... Well, you know, that's going nowhere. So try something else. Well, in the 29 years since it was decided, several other courts had considered the same issue. The First Circuit and the Fifth Circuit, in particular, have said that EDP was wrongly decided. And the First Circuit said, Judge Walker, quote, Judge Walker's dissent provides the better guidance for us than does the majority opinion. The Fifth Circuit and Sobrana said about your dissent, quote, the dissent has the better of the argument. But I will move on. The second reason why you are not constrained by EDP is that this case is, in large part of that, the FDCPA's limiting clause. The limiting clause prohibits its application here. And there is nothing about the decision in EDP that stands in the way of that conclusion because the EDP court did not interpret or even mention the statute's limiting clause. Third, EDP is distinguishable because it relied on a fact that is not present here, that the board was the only party that could enforce the back pay award. By contrast, in this case, the Department of Labor is not the only party that can enforce the administrative award. And the Fifth Circuit and the First Circuit have both interpreted EDP narrowly and emphasize this very limiting aspect of EDP. So finally, in the 29 years since this court decided EDP, two strands of the Supreme Court's jurisprudence have completely eviscerated its foundation. Those two strands are the court's statutory interpretation cases that require strict adherence to the statutory words. And the second governmental regulatory interest not be treated as money or property. In EDP, the heart of EDP was a confusion of the government's regulatory interest with its property interest. The key holding in EDP was that because the board act, I'm now quoting from it, in the public's interest, the back pay award sought by the board may be considered a debt to the United States. With those words, the EDP majority erroneously treated the government's regulatory interest, the acting in the public interest, as creating the debt as the government's property. It confused the government's regulatory authority with its property interest. In the wake of Cleveland and the Bridgegate case, Kelly, that is no longer tenable. So respectfully, in spite of EDP, this is a relatively easy case. By the very plain words of the FDCPA, it may not be used to collect wages to an individual employee, a judgment that is in her favor, and neither EDP nor any authority requires the contrary in a logical conclusion. There you go. Thank you. Thank you very much, Mr. Ross. Thank you. We have two minutes. Yes, Mr. Grumman. Attorney Grumman. Attorney Grumman, for the appellee. Have you got your mute button? I'm so sorry, Your Honor. I thought I had pressed the unmute button and it didn't take. It happened. Sorry. Jesse Grumman from the Department of Labor Solicitor's Office for the United States. At stake in this appeal is whether the Federal Debt Collection Procedures Act applies to a debt under a federal statute exclusively enforced by a federal agency that advances the important federal interest of protecting American workers under our immigration law. As we outlined in our decision in EDP, which is binding precedent, while the proceeds of the debt here will ultimately flow to Ms. Ingler's dossier, it is nonetheless a federal debt subject to the procedures of the FDCPA. For what instrument or authority is the debt owing to the United States? How is it the United States, just, you know, instead of to HELGA? So, our position is that the language owing to the United States under the text of the statute does not simply encompass debts that reach the federal coffers, but rather it means, as this court held in EDP, it means something else. Namely, the relevant inquiry is, the underlying source of the debt, a federal obligation and is its enforcement by the federal government primarily protecting public rather than private interests. And specifically, the limiting clause that Mr. Lewis referenced in his presentation, we believe has significant bearing on the meaning of the phrase owing to the United States in the statute, because the relevant inquiry can't simply be, does the money reach the federal coffers or does it not? Because, in fact, the language that specifically excludes debts originating in private contracts from the definition of federal debt, even if that money ultimately winds up being owed to the federal treasury, as was the case in Sobranes, that language, we believe, is critical in understanding what owing to the United States means and that it encompasses more than simply debts that are destined for the federal coffers. Yeah, that limiting clause helps you. That's a further exclusion of the government's right to collect. Even though the government takes over the debt, if it originated in the first place between private parties, and so now the government is an assinee of the debt, it can't enforce it under the language of the statute. And we don't even have that here. So I think basically what you're saying is the only argument you've got here is that we have a precedent that is binding. No other circuit I know of has followed that precedent. Indeed, it's been criticized in other circuits. And so we're left with the whole, what do we do when we have a precedent like this? And we have rules that say that unless there's an intervening Supreme Court decision, or we decided to take it on bank and overrule it, we're bound. And is that just where we are right now? Your Honor, especially, I don't think it's simply that we have EVP. We do believe that the text of the statute does support our position. And I apologize if I don't think I was clear enough before. When referring to the limiting language that specifies that debts originating in private contracts are not federal debts, even if the money ultimately is owed to the federal treasury, we don't view that as imposing an additional restriction on the definition of debt, but rather helping clarify what a federal debt is. That a federal debt is not a debt that originates in a private transaction between private parties. Rather, a federal debt is a debt that originates in a federal obligation. And so if the debt, a federal obligation that furthers a public interest rather than a private one. Now, the obligation here was to be paid in accordance with the Fair Labor Standards Act and get the appropriate level of wage, right? And that was denied her. It's the obligation was between her and her boss. That's private to me. Respectfully, Your Honor, that's where we, I think, part ways from the appellants here in that the obligation here was not a private obligation. It was very much a federal obligation. It was a violation, not of any private contract, but of the labor condition application that permitted them to hire Ms. Ingres-Gauthier in the first place. This is under the H-1B provisions of the Immigration and Nationalization Act, the INA. And as a prerequisite, I'm sorry? If you're required to pay a certain amount, if her boss was required to pay her a certain amount, and then he entered into an agreement that paid her a lesser amount, that was an illegal agreement. He should have been paying her the right amount. And so she's owed a debt by him for the higher amount, just because it's not the provisions of a contract that says it, it's provisions of law that say it, but it's still a debt owed from her boss to her. It's her wages. It's the wages to which she is entitled under the Immigration and Nationalization Act. But it is under EDP, it is a debt owing to the United States because it is a debt stemming directly not from any private arrangement, but from federal law, from a public obligation. And indeed, we believe that this case actually presents an even stronger one than EDP because it's not only, this is not simply a case where the federal government is by, for example, and under the NLRA by essentially helping regulate the private employer-employee relationship for the benefit of those particular workers. This is a case where the federal government enacted these H-1B provisions principally to benefit American workers who would otherwise be adversely affected by the employment of H-1B non-immigrants. And so this is really a case where the underlying obligation itself is one that very much is public-minded rather than private-minded. It's not a private contract. It's an attestation that entered into by the defendants with the federal government without regard to losing their dossier specifically, but that they will pay whichever H-1B non-immigrant they hire under the LCA, the required wage. Mr. Grauman, is the- Go ahead. I'm sorry, Judge Walker. Go ahead. Mr. Walker, you have very good policy reasons for the position that you take, I never have said that. I'm just looking at the text. And if Congress had wanted to give the government the ability to enforce this, it could have easily done it. But it didn't. It just set an amount that it's owing to the United States, and then it specifies it. That's because you're dealing with the government in a commercial capacity. It buys and sells. It leases and rents and services. It sells property. There's an overpayment and an underpayment and so forth. Those are things that the government can recover under this provision. But this is a very different situation. Here the government is acting, trying to stand in the shoes of someone who is owed a debt and is trying to recover on that basis. And that's not what the statute permits, it seems to me. Maybe you can point out some language that I've overlooked here, but I overlooked 29 years ago and I'm still overlooking. Again, Your Honor, I think in looking to the language of the statute and in trying to discern the meaning of the phrase, owing to the United States, I think if the language were perhaps a different language, owing to the federal treasury or to be paid to a federal agency, we'd be in a different position. But I think the combination of the phrase, owing to the United States, with this additional language that specifically lays out that money that would otherwise go to federal treasury, but that originates in private contracts, in other words, in a non-federal transaction, are excluded from this definition, we believe creates room to understand the statute as referring not merely to debts that go into the federal coffers, but debts that stem, again, from a federal obligation enforced by the federal government whose enforcement primarily protects public rather than private interests. And again, the legislative history, while we agree it doesn't speak directly to this point, as we noted in our brief, the legislative history, as noted by the sponsor, Representative Brooks, he said, federal laws giving rise to obligations are governed by uniform standards. But prior to the FDCPA, those standards were all determined by state laws. So I think when looking to kind of the primary, what we understand to be the primary purpose of the statute is to create uniformity in how federal laws are enforced and how these monetary obligations are enforced, that creates a compelling reason to read the statute as we've urged that it should be read, which is to encompass a transaction like this that stems completely from federal law that furthers the public interest in a very federal domain, the domain of immigration, and where the consequences of reading it to the contrary are, you know, basically that you have these unpredictable, inconsistent remedies under different state law regimes determining whether or not the federal government can enforce its own immigration law. Mr. Grauman, I have a pedestrian question for you. When the Department of Labor's enforcement situation is completed, is there a judgment, even a judgment in an Article III court or a judgment, you know, kind of an order from the Department of Labor? Well, that's what I'm asking. What happens after the Department of Labor determines that the defendant here owes $300,000 to the immigrant, the lady that came in from Iceland? What happens next? So we have a final order that in this case was issued by the Administrative Review Board, or potentially it could have been, you know, an earlier stage order that wasn't appealed. And so at that point, we have a final ZOL order. And at that point, you know, I frankly, in many cases, the employer at issue pays the amount. Well, I understand that, presuming that they don't, what happens next? So presuming that they don't, we have a couple of ways that we proceed. So we'll send out, you know, a demand letter, as I believe was sent in this case. And if not, then we could proceed, you know, we would either proceed by referring the matter to the Department of Justice for, you know, for debt collection, or in some cases, referring it to the Department of the Treasury, which has some measures that they can use. And, you know, to the extent that we refer it to, I'm sorry? In terms of recovery against tax refunds or other taxes? Right. And they have an administrative wage garnishment mechanism as well, typically to higher amounts, like in this case, would be referred to DOJ. If ultimately a judgment is entered, who is the named party that has the benefit of the judgment, like the United States of America, or the wage earner? So in this case, as we're proceeding under the FDCPA, the judgment, you know, we believe would be that the named judgment would be in favor of the United States, albeit, you know, with instructions to remit it to, you know, to Missing and Murdered Zones here. We certainly don't contend that we ultimately have the right to retain this money. That's why I think the appellant's argument regarding, you know, property rights is misplaced here, because we're not contending that we ultimately, you know, have the right to retain this property. We're simply, you know, contending that... If you collect money, you have to give it to the wage earner, right? Absolutely, but in this case, you know, we... Let me... That's fine. That's all I need to know. Now let me ask you just a couple more questions. Does the wage earner, under federal law, have a separate claim that they can prosecute themselves? Not under federal law, no. The only rights that the wage earner has here are under the H-1B provisions of the Immigration and Nationalization Act, which, you know, as numerous courts have held, does not create a private right of action. So, you know, to the extent that she had some private contract with, you know, with Mr. Betty or with the defendants, she might be able to enforce some private contract, but under federal law, her only recourse is to go through the Department of Labor. Okay, thank you. Thank you. Your 10 minutes have expired. Thank you, Mr. Chairman. Mr. Lewis, you've reserved two minutes. Thank you. Just to clarify, the order that was issued by the Department of Labor, the underlying judgment, was in Helga's name, not the government. I think, respectfully, there can be little doubt... Hang on, Mr. Lewis, what did you just say? I didn't... I apologize. I didn't quite hear you. What did you say? The order issued by the Department of Labor, the judgment, is in Helga's name. Okay. There can be little doubt, I think, how the Supreme Court would decide this case. To adopt the government's argument requires treating statutory words differently than their plain meaning. So I think there are three ways to reach the same conclusion that I think we all would expect the U.S. Supreme Court to reach here. One, decide this case under the limiting clause of the FDCPA that was not interpreted or mentioned in EDP. Second, limit EDP to the facts that both the Fifth and the First Circuit emphasized and treated as limiting and distinguishing it. Third, if you want to revisit EDP fully, perhaps the time has come for that. You can and you should. You can do that through en banc review or mini en banc review. Ultimately, the statute here is akin to a minimum wage law. There's a federal law which influences the terms of the wages, but at the end of the day, the debt for the wages is from the employer to the employee. What we have here is a debt to Helga Ingvar's daughter. We simply do not have money owing to the United States by any reasonable meaning of that phrase. For those reasons, respectfully, you should reverse the lower court's grant of summary judgment. Thank you. Thank you. Judge Walker, any questions? No. Okay. Judge Wesley? No. Thank you very much. All right. Thank you. So, we'll reserve decision. We thank counsel in 20-1955. We'll reserve decision. I ask the clerk to adjourn court. Court is adjourned.